## NON-COMPETITION, NON-SOLICITATION, NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT

This Non-Competition, Non-Solicitation, Non-Disclosure and Invention Assignment Agreement (the "**Agreement**") is made by and between Admiin Inc. d/b/a Paro Inc., a Delaware corporation, its subsidiaries, affiliates, predecessors, successors or assigns (collectively, the "**Company**"), and __Luke Kohan__, an individual, as of this 03 day of __October__, 20120

WHEREAS, the Company desires to employ or to continue to employ me, and I desire to be so employed by the Company on the terms and conditions set forth herein;

WHEREAS, as a result of my employment with the Company, I acknowledge I have or will become privy to Confidential Information of the Company and, potentially, its Affiliates, and I understand such Confidential Information constitutes one of the legitimate business interests of the Company that must be guarded against unfair competition.

NOW, THEREFORE, for good and valuable consideration, including but not limited to the offer of employment or my continued employment with the Company, compensation I have received or will receive from the Company, access to the Company's Confidential Information and Customers, the receipt and sufficiency of which are hereby acknowledged, I agree as follows:

1. **At-Will Employment. I UNDERSTAND AND ACKNOWLEDGE THAT NOTHING IN THIS AGREEMENT IS INTENDED TO ALTER THE AT-WILL EMPLOYMENT RELATIONSHIP BETWEEN THE COMPANY AND ME AND THAT MY EMPLOYMENT WITH THE COMPANY IS ON A STRICT "AT-WILL" BASIS. THIS MEANS THAT EMPLOYMENT IS NOT GUARANTEED FOR ANY PERIOD OR ON PARTICULAR TERMS, AND NEITHER THIS AGREEMENT NOR ANY COMMUNICATION SHOULD BE CONSTRUED AS A CONTRACT OF GUARANTEED EMPLOYMENT FOR A PARTICULAR PERIOD OF TIME. EITHER THE COMPANY OR I MAY TERMINATE MY EMPLOYMENT AT ANY TIME, WITH OR WITHOUT CAUSE OR NOTICE. NO REPRESENTATIVE OF THE COMPANY, OTHER THAN THE CHIEF EXECUTIVE OFFICER (AND THEN ONLY IN WRITING), HAS AUTHORITY TO ENTER INTO ANY AGREEMENT CONTRARY TO THE AT-WILL RELATIONSHIP.**

2. **Confidential Information**.

    a. **Definition of Confidential Information**. As used in this Agreement, the term "**Confidential Information**" means all information, knowledge and data, whether oral or written, electronic or in other form, that is not generally known to the public or otherwise readily ascertainable by proper means and relates to the actual or anticipated business or research and development of the Company, including, but not limited to, proprietary information, technical data, trade secrets, know-how, flow-charts, research, software, developments, inventions, processes, formulas, algorithms, prices and costs, technology, designs, drawings, engineering, hardware configurations, source and object codes, data and databases, compilations, marketing, finances, forecasts, product plans, business plans, internal processes, sales strategy, business

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

strategy, and other information regarding the Company's business, products, services, markets, suppliers, contributors, customers and customer lists, members and member lists, sponsors and sponsor lists, terms of customer agreements, advisory board members and advisory board member lists, information about customers learned during the period of my employment with the Company, including, but not limited to, the identities, preferences and purchasing histories of members, sponsors and/or customers of the Company on whom I called, with whom I became acquainted or about whom I received information during the period of my employment with the Company, and other information designated "confidential," "proprietary," and/or other similar designation. "Confidential Information" also includes information that is not generally known to the public or otherwise readily ascertainable by proper means that is owned or controlled by any third party that may disclose such information to the Company or to me under any obligation of confidentiality in the course of the Company's business. The term "Confidential Information" does not, however, include information that is in the public domain (other than information that became public as a result of a breach of a duty of confidentiality) or information rightfully received by me outside the course of my employment with the Company from a third party who does not owe the Company a duty of confidentiality with respect to such information.

   b. <u>Protection of Confidential Information</u>.  I agree at all times during the period of my employment with the Company and thereafter to (i) hold the Confidential Information in strictest confidence, and not to directly or indirectly copy, distribute, disclose, divert, or disseminate, in whole or in part, any of such Confidential Information to any person, firm, corporation, association or other entity except:  (x) to authorized agents of the Company who have a need to know such Confidential Information for the purpose for which it is disclosed; or (y) to other persons for the benefit of the Company, in the course and scope of my employment with the Company, provided that I have received prior written authorization to such effect from an authorized officer of the Company, and (ii) refrain from directly or indirectly using the Confidential Information other than as necessary and as authorized in the course and scope of my employment with the Company.

   c. <u>Third Party Information I Have Received</u>.  I represent that my performance of all terms of this Agreement does not breach, has not breached and will not breach any agreement to keep in confidence proprietary information, knowledge or data (if any) acquired by me from any third party in confidence or trust prior or subsequent to the commencement of my employment with the Company.  I agree that I have not improperly used or disclosed and that I will not, during the period of my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former employer or other person or entity and that I have not brought and will not bring onto the premises of the Company any non-public document or proprietary information belonging to any such third party, unless such document or information has become known to the public or within the industry through no fault or breach of mine or others or unless consented to in writing by such third party.

   d. <u>Third Party Information the Company Has Received</u>.  I recognize that the Company has received and in the future will receive from third parties confidential and/or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

person or entity or to use it except as necessary and as authorized in carrying out my work for the Company consistent with the Company's agreement with such third party.

    e. <u>Trade Secrets Disclosure</u>. I acknowledge that, pursuant to 18 U.S.C. Section 1833(b), I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (i) is made: (x) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (y) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  If I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I may disclose a trade secret to my attorney and use the trade secret information in the court proceeding, if I:  (A) file any document containing the trade secret under seal; and (B) do not disclose the trade secret, except pursuant to court order.

    f. <u>Exception</u>. Nothing in this Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. I understand that I do not need the prior authorization of the Company to make any such reports or disclosures, and that I am not required to notify the Company that I have made such reports or disclosures.

   3. **Intellectual Property**.

    a. <u>Definition of Intellectual Property</u>. As used in this Agreement, the term **"Intellectual Property"** means all inventions, original works of authorship, trade secrets, concepts, ideas, discoveries, developments, improvements, combinations, methods, designs, trademarks, trade names, software, data, mask works, and know-how, whether or not patentable or registrable under copyright, trademark or similar laws, including, but not limited to, all specifications, data, know-how, formulae, algorithms, designs, compositions, processes, computer programs (including object code and source code, in machine readable and printed or otherwise perceptible form as well as software development, architecture, input and design), computer database technologies, systems, website and back-end technologies, customer lists, vendor lists, financial models, websites (including domain names), marketing plans (including brand and logo work), and any other information relating to the Company's business.

    b. <u>Prior Intellectual Property</u>. I have attached hereto, as <u>Exhibit A</u>, a list describing with particularity all Intellectual Property that was made by me prior to or during, but separate from, my employment with the Company that relates in any way to the Company's current or proposed business, including but not limited to products or research and development (collectively referred to as "**Prior Intellectual Property**"); if no such list is attached, I represent that there is no such Prior Intellectual Property.  If, in the course of my employment with the Company, I incorporate into a Company product, process, service, documentation or other work product, or use in connection with my employment with the Company, any Prior Intellectual Property in which I have any interest, I agree to promptly advise the Company of such incorporation or use, and I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, transferable, worldwide license (with unlimited right to sublicense) to

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

make, have made, use, offer for sale, sell, import, reproduce, distribute, publicly perform, publicly display, make derivative works based upon, and otherwise fully exploit such Prior Intellectual Property.

c.     <u>Disclosure and Assignment of Company Intellectual Property</u>.  As used in this Agreement, the term "**Company Intellectual Property**" means any Intellectual Property that I have solely or jointly conceived, reduced to practice, authored, or otherwise created, may solely or jointly conceive, reduce to practice, author, or otherwise create, or cause to be conceived, reduced to practice, authored or otherwise created, during the period of my employment with the Company or, to the extent relating to the Business (as defined below), for a period of three (3) months following the termination of my employment.  I agree that I will promptly make full written disclosure to the Company and will hold in trust for the sole right and benefit of the Company all Company Intellectual Property.  I further agree that all Company Intellectual Property comprising original works of authorship fixed in a tangible medium that I created or create within the scope of and during the period of my employment with the Company are, to the greatest extent permitted by applicable law, "works made for hire" as that term is defined in the United States Copyright Act.  I hereby assign to the Company, or its designee, all my right, title, and interest in and to such Company Intellectual Property, except as provided in <u>Section 3(f)</u> below.  I understand and agree that the decision whether or not to commercialize or market any Company Intellectual Property developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Intellectual Property.

d.     <u>Maintenance of Records</u>.  I agree to keep and maintain adequate and current written records of all Company Intellectual Property that is conceived, reduced to practice, authored, or otherwise created by me or at my direction (solely or jointly with others) during the period of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic communications and files, and any other format that may be specified by the Company.  The records will be available to and remain the sole property of the Company at all times.  I agree not to remove such records from the Company's place of business except as expressly permitted by Company policy which may, from time to time, be revised at the sole election of the Company for the purpose of furthering the Company's business.

e.     <u>Patent and Copyright Registrations</u>.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Company Intellectual Property in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, and the execution of all applications, specifications, oaths, assignments and all other instruments which the Company deems necessary to apply for, obtain, maintain and transfer such rights and to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Company Intellectual Property.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of my employment with the Company.  If the Company is unable for any reason to secure my execution of any instrument or papers to apply for or to pursue any application for any United States or foreign patents, copyright or trademark registrations, or other protection of any Company Intellectual Property, then I hereby irrevocably designate and appoint the Company

27341827.2                                    -4-

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any instruments and papers related to such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright or trademark registrations or other protection of Intellectual Property thereon with the same legal force and effect as if executed by me.

    f. <u>Exception to Assignments</u>. I understand that the provisions of this Agreement requiring assignment of Company Intellectual Property and Prior Intellectual Property to the Company do not apply to any invention which qualifies fully under the provisions of the Illinois Employee Patent Act 765 ILCS 1060 *et seq.* I will advise the Company promptly in writing of any inventions that I believe meet the criteria in Illinois Employee Patent Act 765 ILCS 1060 *et seq.* and are not otherwise disclosed on <u>Exhibit A.</u> I acknowledge the statement set forth below.

    <u>NOTICE TO ILLINOIS EMPLOYEES:</u> In accordance with the Illinois Employee Patent Act, 765 ILCS 1060 *et seq.*, employee is hereby advised that <u>Section 3</u> of this Agreement regarding the Company's ownership of Intellectual Property does not apply to any invention for which no equipment, supplies, facilities or trade secret information of the Company was used and which was developed entirely on employee's own time, unless (i) the invention relates to the business of the Company or to the Company's actual or demonstrably anticipated research or development or (ii) the invention results from any work performed by employee for the Company.

    4. **Conflicting Employment & Non-Competition.** I agree that during the period of my employment with the Company I will not engage in any other employment, occupation or consulting arrangement anywhere in the world, nor will I engage in any other activities that conflict with my obligations to the Company. During the Restricted Period (as defined below), I will not, anywhere in the Restricted Territory (as defined below), without the Company's prior written consent, directly or indirectly, alone or as a partner, member, manager, owner, joint venturer, officer, director, employee, consultant, agent, contractor, stockholder or in any other capacity of any company or entity, engage in the Business, have any financial interest in any company or entity engaging in the Business or make any loans to any company or entity engaging in the Business. For purposes of this Agreement, the term "**Business**" means (a) the provision of outsourced financial services, including bookkeeping and accounting, financial analysis and CFO strategy services, or (b) the provision, development, marketing, sale or maintenance of products or services which are substantially similar to those developed, marketed, distributed, sold, maintained or otherwise provided by, or actively planned to be developed, marketed, distributed, sold, maintained or otherwise provided by the Company during the term of my employment with the Company. Notwithstanding the foregoing, my ownership of not more than one percent (1%) of the outstanding shares of stock of any corporation having a class of securities actively traded on a national securities exchange or on the NASDAQ Stock Market shall not be deemed, in and of itself, to violate the provisions of this <u>Section 4</u>. I agree and acknowledge that the restrictions in this <u>Section 4</u> shall apply throughout the Restricted Territory, and that the geographic scope of the restriction is necessary and reasonable because the Company conducts business at least nationally, and the restriction is necessary to protect the legitimate business interests of the Company. I further agree and acknowledge that the restrictions in this <u>Section 4</u> shall apply to self-employment by me.

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

5. **Returning Company Property and Documents**. I agree that, within five (5) business days after the date on which my employment with the Company terminates for any reason, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all Confidential Information, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items, whether in written, electronic or other form, developed by me pursuant to my employment with the Company or otherwise belonging to the Company including, without limitation, those records maintained pursuant to Section 3(d). I further agree that any property situated on the Company's premises and owned by the Company, including magnetic, solid state and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time, with or without notice, regardless of any locks, codes, password protection or other security measures as may exist or have been applied at any time. In the event my employment with the Company terminates for any reason, I agree to sign and deliver to the Company, within five (5) business days after the effective date of such termination, a "Termination Certification" in a form to be provided by the Company.

6. **Past Employment; Notification of New Employer**.

   a. <u>Past Employment</u>. I hereby represent and warrant to the Company that (i) my employment or continuing employment with the Company and my execution, delivery and performance of this Agreement do not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which I am a party or by which I am bound, and (ii) I am not a party to or bound by any employment agreement, non-compete agreement, non-solicitation agreement, confidentiality agreement or any other restrictive covenant or agreement with any other person or entity, except as may have been disclosed to the Company in writing and attached to this Agreement as an addendum, none of which has been or will be violated by me or by the Company's conduct of its business as currently conducted and as proposed to be conducted.

   b. <u>Notification of New Employer</u>. In the event that I seek employment with or engagement in any capacity by another person or entity, at any time during the period of my employment with the Company or thereafter, I hereby agree to notify such person or entity of my obligations under this Agreement prior to commencing my employment with, or engagement by, such person or entity. Further, I hereby consent to the Company providing notice to such person or entity as to my obligations under this Agreement, including that the Company may transmit a copy of this Agreement to such person or entity. At the Company's request, I agree to disclose to the Company in writing the name and location of my new employer and my job title and anticipated job responsibilities with my new employer.

7. **Non-Solicitation**.

   a. <u>Solicitation of Employees</u>. I agree that during my employment with the Company and during the Restricted Period, I shall not directly or indirectly solicit, induce, recruit or encourage any Company Employee (as defined below) to leave his or her employment, or take away or hire any such Company Employee, or attempt to solicit, induce, recruit, encourage or take away or hire any such Company Employee, either for myself or for any other

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

person or entity. For purposes of this Agreement, the term "**Company Employee**" means (x) any person who is an employee of the Company at the time of my solicitation of and/or communication with such person, or (y) any person who at any time was an employee of the Company within the 180-day period immediately preceding (A) the termination of my employment with the Company or (B) my solicitation of and/or communication with such person.

        b.   <u>Solicitation of Customers</u>. I agree that during my employment with the Company and during the Restricted Period, I shall not directly or indirectly induce or solicit or attempt to induce or solicit any Customer (as defined below) of the Company. My agreement "not to solicit" means that I will not directly or indirectly initiate, contact or engage in any contact or communication, of any kind whatsoever, that has the purpose or effect of inviting, assisting, encouraging or requesting any Customer to: (i) transfer his/her/its business from the Company to me, my employer or any third party, or (ii) purchase any products or services from me, my employer or any third party that are or may be competitive with the Company's products or services, or use any products or services of mine, my employer or of any third party that are or may be competitive with the Company's products or services, or (iii) otherwise diminish, divert, discontinue or terminate his/her/its patronage and/or business relationship with the Company. For purposes of this Agreement, the term **"Customer"** means any customer of the Company: (x) with which, for which or to which I communicated, performed any services, or sold or licensed any products during the 24-month period preceding the termination of my employment with the Company or (y) of which I have or had knowledge during my employment with the Company.

        8.   **<u>Consideration for and the Reasonableness of Sections 2, 4 and 7; Tolling; Modification; and Definitions of Restricted Period and Restricted Territory</u>**.

        a.   <u>Consideration</u>. I agree and acknowledge that I have received valuable and adequate consideration in exchange for the restrictions in <u>Sections 2</u>, <u>4</u> and <u>7</u> of this Agreement, including but not limited to the offer of employment or continued employment with the Company, compensation I have received or will receive from the Company, and access to the Company's Confidential Information and Customers.

        b.   <u>Reasonableness of Restrictions</u>. I understand how important the relationships which the Company has with its Customers and Company Employees are, as well as how significant the maintenance of its Confidential Information is to the business and success of the Company, and I acknowledge the steps the Company has taken, is taking and will continue to take to develop, preserve and protect these relationships and Confidential Information. Accordingly, I agree that the scope and duration of the restrictions and limitations described in this Agreement, particularly in <u>Sections 2</u>, <u>4</u> and <u>7</u>, are reasonable and necessary to protect the legitimate business interests of the Company, and I agree and acknowledge that all restrictions and limitations relating to the period following the end of my employment with the Company will apply regardless of the reason my employment ends. I also agree and acknowledge that the enforcement of <u>Sections 2</u>, <u>4</u> and <u>7</u> will not in any way preclude me from becoming gainfully employed or engaged as a contractor in such manner and to such extent as to provide me with an adequate standard of living.

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

      c.    <u>Tolling</u>.  In the event of a breach or violation by me of <u>Sections 4</u> and/or <u>7</u> of this Agreement, the non-competition and non-solicitation periods appearing in <u>Sections 4</u> and <u>7</u> shall be tolled (retroactive to the date such breach commenced) until such breach or violation has been duly cured.

      d.    <u>Modification</u>.  If any provision or term in Sections <u>2</u>, <u>4</u> and/or <u>7</u> of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, the invalid and unenforceable portion shall be reformed to the maximum time, geographic scope, activity-related restrictions and/or limitations permitted by applicable law, so as to be valid and enforceable.

      e.    <u>Definition of Restricted Period</u>.  For purposes of this Agreement, the term "**Restricted Period**" shall mean the period commencing on the date of this Agreement and terminating on the first anniversary of the date on which my employment with the Company is terminated for any reason.

      f.    <u>Definition of Restricted Territory</u>.  For purposes of this Agreement, the term "**Restricted Territory**" shall mean the United States and each other country, province, state, city or other political subdivision in which the Company carries on, had carried on the Business during the term of my employment and/or the Restricted Period.

9.    <u>**Representations and Covenants**</u>

      a.    <u>As to Compliance</u>.  I represent that as of the date of my execution of this Agreement, I am in full compliance with and have not breached any terms or conditions of this Agreement.

      b.    <u>As To Fulfillment of Terms</u>.  I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement.  I represent that my performance of all the terms of this Agreement does not and will not breach any agreement with respect to intellectual property or to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment with the Company.  I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith and will not use or incorporate into any Company product or service any intellectual property of any third party without the written consent of the Company following full disclosure.

      c.    <u>As To Intellectual Property</u>.  I agree that, to the best of my knowledge, all work, or any part thereof, which I have delivered or may deliver to the Company does not, and will not, upon delivery to the Company, infringe upon any patent right, copyright, trade secret right or other intellectual property right of any third party.  I hereby represent and warrant that I have not entered into any agreement or commitment with any third party which may affect the Company's title to such work or right to market and distribute such work.

      d.    <u>As To Non Disparagement</u>.  I agree not to do anything, and not to make any oral or written statement to any person (including but not limited to any employee, client, customer, supplier, or vendor of the Company), that disparages or places in a false or negative light: (i) the Company; or (ii) any past or present officer, director, employee, representative,

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

partner, investor, member, manager or similar business relation, or any product or service, of the Company. I further agree that I will not directly or indirectly cause or direct others to take any actions or make any statements that violate this provision.

10. **Legal and Equitable Remedies**. I acknowledge that the breach of this Agreement would cause substantial loss to the goodwill of the Company, and cause irreparable harm for which there is no adequate remedy at law. Further, because my services are personal and unique, because damages alone would not be an adequate remedy, and because I may have access to and become acquainted with the Confidential Information and Intellectual Property of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without having to post bond or prove actual damages, and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement, including, without limitation, money damages. I shall be liable to pay all costs, including reasonable attorneys' and experts' fees and expenses, that the Company may incur in enforcing or defending this Agreement, whether or not litigation is actually commenced and including litigation of any appeal taken or defended by the Company where the Company succeeds in enforcing any provision of this Agreement.

11. **General Provisions**.

a. <u>Governing Law; Consent to Personal Jurisdiction</u>. This Agreement will be governed by the laws of the State of Illinois. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Chicago, Illinois for any lawsuit arising from or relating to this Agreement, and agree that such courts shall be the sole and exclusive venue for any such lawsuits (except with respect to post-judgment enforcement proceedings) filed by either party, in regard to claims or actions arising from or relating to this Agreement; <u>provided</u>, <u>however</u>, that nothing in this <u>Section 11(a)</u> shall restrict the Company from bringing a lawsuit in another venue to the extent the Company is also bringing a lawsuit against a third party who is not subject to jurisdiction in Chicago, Illinois.

b. <u>No Oral Modification or Waiver</u>. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed both by me and by a duly-authorized representative of the Company. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

c. <u>Severability</u>. Subject to the provisions of <u>Section 8(d)</u> hereof, if one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

d. <u>Successors and Assigns</u>. This Agreement (i) will be binding upon my heirs, executors, administrators and other legal representatives, and (ii) will inure to the benefit of and be binding upon the successors and assigns of the Company. I agree and acknowledge that I shall not have the right to assign any of my duties and obligations hereunder.

e. <u>Waiver of Jury Trial</u>. EACH PARTY HERETO HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR ANY ADDENDUM OR OTHER AGREEMENT WHICH, IN ANY WAY, ARISES OUT OF OR RELATES TO MY EMPLOYMENT WITH THE COMPANY OR ANY OTHER RELATIONSHIP BETWEEN MYSELF AND THE COMPANY.

       f.    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment with the Company and the assignment of this Agreement by the Company to any successor in interest or other assignee.

       g.    <u>Drafting and Construction</u>.  THE TERMS OF THIS AGREEMENT HAVE BEEN CONSIDERED AND NEGOTIATED BETWEEN THE PARTIES IN AN ARM'S LENGTH TRANSACTION, AND SHALL NOT BE CONSTRUED AGAINST EITHER PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.  Titles and headings to sections hereof are for the purpose of reference only and do not affect the provisions hereof or the rights or obligations of the parties hereto.

       h.    <u>Entire Agreement</u>.  This Agreement, together with Exhibit A hereto, sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions, representations and agreements made regarding the terms of my employment, whether written or oral.  I acknowledge and agree that I have not relied on any such prior discussions, representations or agreements in entering into this Agreement.

       i.    <u>Voluntary Nature of Agreement</u>.  I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE.  I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL*.  FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

       j.    <u>Affiliates</u>.  With respect to any of my obligations under this Agreement, I agree that I will cause any person or entity affiliated with me or that is under my control to comply with the terms of this Agreement as if such person or entity were a party hereto.

       k.    <u>Construction</u>.  As used herein, all provisions shall include the masculine, feminine, neuter, singular and plural thereof, wherever the context and facts require such construction.

       l.    <u>Counterparts</u>.  This Agreement may be executed and delivered in one or more counterparts (including by facsimile, e-mail, or other electronic transmission), each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

**[Signature Page Follows.]**

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

**IN WITNESS WHEREOF**, the parties hereto have executed this Non-Competition, Non-Solicitation, Non-Disclosure and Invention Assignment Agreement voluntarily and of their own free act and deed, without any coercion, duress or undue influence, as follows:

Signed: *Luke Kohan*

Print Name: Luke Kohan

Dated: October 03 , 2020


Agreed and Accepted:

THE COMPANY:

ADMIIN INC. d/b/a PARO INC.


By: Michael Burdick

Name: Michael Burdick
Title: Chief Executive Officer

Dated: 10 / 03 / 2020 ____, 201_


27341827.2

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

**Exhibit A**

**ADMIIN INC. d/b/a PARO INC.**
**LIST OF PRIOR INTELLECTUAL PROPERTY**
**AND ORIGINAL WORKS OF AUTHORSHIP**

<u>Title</u>                    <u>Date</u>                    Identifying Number or Brief <u>Description</u>

*LK* No inventions or improvements
____ Additional Sheets Attached
____ Due to confidentiality agreement(s) with prior employer(s), I cannot disclose certain
     inventions that would otherwise be included on the above-described list.

Employee's Signature: *Luke Kohan*

Print Name: Luke Kohan

Dated: October 03 , 2012̲0̲

**A**-1

Doc ID: 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Non-Competition, Non-Solicitation, Non-Disclosure and... |
| **FILE NAME** | #27341827v2 - (Pa... Assignment .docx |
| **DOCUMENT ID** | 8e47cd7fee5758697bf9bd7ab4b71fba79ba3c48 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**VIEWED**   **10 / 02 / 2020**   Viewed by - (lukekohan5@gmail.com)
18:25:38 UTC   IP: 24.186.121.96

**SIGNED**   **10 / 03 / 2020**   Signed by - (lukekohan5@gmail.com)
19:41:23 UTC   IP: 24.186.121.96

**COMPLETED**   **10 / 03 / 2020**   The document has been completed.
19:41:23 UTC