**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ADMIIN INC. d/b/a PARO INC.,** | ) | |
| **A Delaware Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:23-cv-4430** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUKE KOHAN an individual,** | ) | |
| **and FIRMKEY SOLUTIONS LLC, a** | ) | |
| **Minnesota limited liability company,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS RULE 65 EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Admiin Inc. d/b/a

Paro Inc. ("Paro" or the "Company"), by its undersigned attorneys, submits the following

Memorandum of Law in Support of Its Emergency Motion for Temporary Restraining Order and

Preliminary Injunction:

**I. INTRODUCTION**

As fully set forth in its Verified Complaint for Injunctive and Other Relief (the

"Complaint"), Paro, a full service finance and accounting company, seeks immediate injunctive

relief to stop Defendant Luke Kohan ("Kohan"), a former employee of Paro who founded and is

now operating a directly competitive business to Paro, co-Defendant FirmKey Solutions LLC

("FirmKey"), from further breaching the terms of his Non-Competition, Non-Solicitation, Non-

Disclosure and Invention Assignment Agreement (the "Non-Compete Agreement") with Paro

and misappropriating Paro's confidential information and trade secrets (collectively, the

"Confidential Information"). Paro also seeks immediate injunctive relief to stop FirmKey from

misappropriating Paro's Confidential Information and tortiously interfering with Paro's contractual relationship with Kohan.

Neither Kohan nor FirmKey can dispute that Kohan had access to and intimate knowledge of Paro's Confidential Information, Kohan's Non-Compete Agreement bars him from owning or working for a competitor of Paro, FirmKey is a direct competitor of Paro, and Kohan founded and is now working for FirmKey. Paro is entitled to immediate injunctive relief to stop Kohan's and FirmKey's unlawful conduct.

## II.    ARGUMENT

### A.    Elements for Entry of a Temporary Restraining Order and/or Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure authorizes the Court to issue an interlocutory injunction in appropriate circumstances. In order to obtain immediate preliminary injunctive relief, Paro need only demonstrate that: (1) it has some likelihood of success on the merits of its claims; (2) there is no adequate remedy at law and; and (3) it will endure irreparable harm if injunctive relief is not granted. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). Once Paro has met these requirements, the Court then balances the harm that Defendants will suffer if the injunction is granted against the harm to Paro if relief is denied. *Id.* Finally, the Court considers whether the public interest would be adversely affected by the issuance of the injunction. *Id.* The same standard applies with respect to both temporary restraining orders and preliminary injunction orders. *See Carlson Grp., Inc. v. Davenport*, 2016 U.S. Dist. LEXIS 171915 (N.D. Ill. Dec. 13, 2016).

### B.    Paro is Likely to Prevail on the Merits of Its Claims

As to the first injunction element, Paro need only demonstrate that it has "some chance" of succeeding on the merits to justify the issuance of injunctive relief. *Lineback v. Spurlino*

*Materials, LLC*, 546 F.3d 491, 502 (7th Cir. 2008). As the Seventh Circuit has explained, this "threshold is low." *Brunswick Corp v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986); *see also Frullati Franchise Sys. v. Dana Areece & Co., Inc.*, 2001 U.S. Dist. LEXIS 8900 (N.D. Ill. June 27, 2001) (stating that for purposes of a TRO or preliminary injunction, a plaintiff need only establish a "trivial chance of succeeding on the merits") (citing *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993)). That standard is easily met here.

### 1. Kohan Has Breached the Non-Compete Agreement

The Complaint sufficiently alleges a breach of the Non-Compete Agreement by Kohan. To establish a *prima facie* case of breach of contract under Illinois law, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach of the contract by defendant, and the resultant damages or injury. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 226 (Ill. App. 2007). Illinois courts recognize that restrictive covenants are a valid means for a company to protect its proprietary interests in its client relationships, workforce and confidential information. *E.g.*, *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871 (Ill. Dec. 1, 2011); *Abel v. Fox*, 654 N.E.2d 591, 597-598 (Ill. App. 1995) ("In Illinois, confidential information and customer relationships can be a protectable interest of an employer."); *Illinois Power Co. v. Latham*, 303 N.E.2d 448, 458 (Ill. App. 1973) ("the right to conduct a lawful business is a property right which equity may protect by injunction from improper and unlawful interference"); *Arpac Corp. v. Murray*, 589 N.E.2d 640, 650 (Ill. App. 1992) (maintaining a stable workforce is a legitimate business interest in Illinois).

So long as restrictive covenant agreements are reasonable in scope, "enforcement by injunction is customary and proper." *Instrumentalist Co. v. Band, Inc.*, 480 N.E.2d 1273, 1279 (Ill. App. 1985). "Enforceability of a restrictive covenant … is dependent on whether, given the

-3-

particular facts of the case, the restraints imposed thereby are reasonably necessary for the protection of the [plaintiff's] business from unfair or improper competition." *Arpac Corp.*, 589 N.E.2d at 649; *see also Outsource Int'l, Inc. v. Barton & Barton Staffing Solutions*, 192 F.3d 662, 666 (7th Cir. 1999) ("The basic test applied by Illinois courts in determining the enforceability of restrictive covenants is 'whether the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer.'") (*quoting Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1080 (Ill. App. 1992)).

Here, Kohan cannot credibly dispute that the Non-Compete Agreement is enforceable under applicable law and that he breached the contract. Paro and FirmKey are direct competitors. Kohan had access to and knowledge of Paro's Confidential Information while he was employed by Paro, and he founded, and is working for, FirmKey. Kohan's employment with FirmKey threatens Paro's Confidential Information and the viability of Paro's relationships with its clients. Kohan's indisputable conduct gives rise to present and actual harm to Paro. Of course, there is no requirement that Paro must wait until it has suffered injuries before this Court can grant injunctive relief. *Schorr Paper Products, Inc. v. Frary*, 392 N.E.2d 1148, 1153 (Ill. App. 1979) ("[W]hile there is nothing in the record to indicate that defendant has succeeded in making a sale to one of plaintiff's customers, *there is no requirement that a court must wait until an injury occurs before granting injunctive relief in a restrictive covenant case*.") (emphasis added). Thus, Paro is likely to succeed in its breach of contract claim.

## 2. Paro is Likely to Succeed on Its Trade Secrets Claims[1]

To establish a claim of misappropriation of trade secrets under the ITSA, the plaintiff must prove: (a) the existence of a trade secret; (b) misappropriation of the secret information; and (c) that the secret information was used in the defendants' business. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992). Here, Paro is likely to succeed in establishing all of the foregoing elements.

### a. *The Confidential Information constitutes trade secrets*

The ITSA defines a "trade secret" as "information, including but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). Whether the information sought to be protected qualifies as a trade secret

---

[1] For purposes of the Motion and this Memorandum of Law, Paro has assumed that the Illinois Trade Secrets Act (ITSA) predominates the Company's trade secrets claims, but the result would be the same under the federal Defend Trade Secrets Act (DTSA) or, if New York law applies instead of Illinois law, under New York trade secret law. Several courts have recognized that although the DTSA gives rise to a federal cause of action, its substantive provisions largely parallel the Uniform Trade Secrets Act (UTSA), on which the ITSA is based, and thus courts may look to case law interpreting the state UTSA when analyzing claims under the DTSA. *See, e.g., Mickey's Linen v. Fischer*, 2017 U.S. Dist. LEXIS 145513, *27 n.1 (N.D. Ill. Sept. 8, 2017) ("As the DTSA is based on the same Uniform Act as the ITSA and other state trade secret laws, the Court considers [plaintiff's] claims under both statutes together."); *IBM v. De Freitas Lima,* 2020 U.S. Dist. LEXIS 161532, *33 (S.D.N.Y. Sep. 3, 2020) (applying the inevitable disclosure doctrine under New York law and finding that defendant's new position "'could result' in his use, disclosure, and/or reliance upon Plaintiff's trade secrets and confidential information for the benefit of Plaintiff's competitor"); *Payment Alliance International, Inc. v. Ferreira,* 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007) (same). Thus, Paro's argument regarding Defendants' violations of the ITSA apply equally to Paro's DTSA claim, and if applicable, a claim under New York trade secret law.

focuses fundamentally on the secrecy of the information. *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1304 (N.D. Ill. 1996); *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209, 215 (Ill. App. 1995) (holding that the key factor to establishing secrecy "is the ease with which the information can be readily duplicated without involving considerable time, effort or expense"). Information is a trade secret if it is not generally known to others who could benefit from using it. *Mangren Research & Dev. Corp. v. Natl. Chem. Co., Inc.*, 87 F.3d 937, 942-43 (7th Cir. 1996).

It is well-established that customer lists and other client-related information can constitute protectable trade secrets. 765 ILCS 1065/2(d) (including "list of actual or potential customers" in definition of "trade secrets"); *APC Filtration, Inc. v. Becker*, 2008 WL 3008032, *9 (N.D. Ill. 2008) (holding that list of actual and potential customers was a trade secret); *Multiut Corp. v. Draiman*, 834 N.E.2d 43, 51 (Ill. App. 2005) (holding that employer's customer list qualified as a trade secret); *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1344 (Ill. App. 1993) ("Items such as customer lists, pricing information, and business techniques can be trade secrets if the employer has developed the information over a number of years at great expense and kept it under tight security."). In *Lucini Italia Co. v. Grappolini*, 2003 U.S. Dist. LEXIS 7134 (N.D. Ill. Apr. 28, 2003), the court held that the plaintiff's research and marketing plans and customer and supplier identities constituted trade secrets because they derived a substantial value from being known to the plaintiff and not to its competitors such that if the plaintiff's competitors were to have access to the information: (a) they would know the plaintiff's plans and strategies while the plaintiff would not know the competitors' plans; (b) they would be able to utilize detailed knowledge of the market and consumer preferences without incurring the cost of

obtaining such information from studies and research; and (c) they would be able to anticipate and undercut the effectiveness of the plaintiff's market methods.

Paro's Confidential Information is no different. If Kohan and FirmKey are permitted to take and use Paro's Confidential Information, they will have effectively avoided the need to create this information through their own research, development and hard work. Moreover, Paro has taken aggressive measures to protect the secrecy of its Confidential Information. It secures the confidentiality of the information by protecting access to the information with passwords, by disseminating the information to employees on a need-to-know basis, and by having employees sign agreements acknowledging the confidential nature of the information. *See generally* Complaint; *Service Centers of Chicago, Inc. v. Minogue*, 535 N.E.2d 1132, 1135 (Ill. App. 1989) (finding that trade secret protection is maintained when the information is used by a person in his business operations and is known only by such person and limited other persons to whom it may be reasonably necessary to confide it). Kohan and FirmKey cannot possibly argue that Paro's Confidential Information is available through public means or that they sought Paro's Confidential Information for legitimate and lawful business purposes. Accordingly, Paro has established that its Confidential Information constitutes protectable trade secrets.

### b.      *Defendants have misappropriated the Confidential Information*

"Misappropriation" under the ITSA includes the acquisition or disclosure, or the *threatened* acquisition or disclosure, of a trade secret. 765 ILCS 1065/2(b); *see also Lakeview Technology, Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006) (holding that employer was entitled to preliminary injunction relating to defendant's misappropriation of trade secrets even though employer could not actually establish that defendant had disclosed its trade secrets).

The ITSA also specifies that improper means of acquiring a trade secret include "breach of a confidential relationship or other duty to maintain secrecy or limit use." 735 ILCS 1065/2(a).

Moreover, a plaintiff prevails under the ITSA if it is inevitable that the defendant will use information he obtained under a duty of secrecy to the detriment of the plaintiff. *PepsiCo v. Redmond*, 54 F.3d 1262, 1269-70 (7th Cir. 1995); *Strata Marketing, Inc. v. Murphy*, 740 N.E.2d 1166, 1178 (Ill. App. 2000) ("We believe that *PepsiCo* correctly interprets Illinois law and agree that inevitable disclosure is a theory upon which a plaintiff in Illinois can proceed under the [Illinois Trade Secrets] Act."); *YCA, LLC v. Berry*, Case No. 03 C 3116, 2004 U.S. Dist. LEXIS 8129 (N.D. Ill. May 7, 2004) (extending the inevitable disclosure doctrine to misappropriation of confidential information). The inevitable disclosure doctrine is premised on the realization that unless an employee possesses the "uncanny ability to compartmentalize information, he will necessarily" rely on and use his former employer's trade secrets and/or confidential information. *PepsiCo*, 54 F.3d at 1269; *see also Lakeview Technology, Inc. v. Robinson,* 446 F.3d 655, 657 (7th Cir. 2006) (holding that plaintiff was entitled to preliminary injunction even though it could not actually establish that defendant had disclosed its trade secrets).

In *Lucini Italia*, the plaintiff established that the disclosure of its trade secrets was inevitable by demonstrating that: (a) it was in direct competition with the corporate defendant; (b) the individual defendant had similar responsibilities for his new employer – the very subject about which he received the plaintiff's trade secret information; and (c) there were no steps the corporate defendant could take to prevent the individual defendant from using the plaintiff's trade secret information to fulfill his duties with the corporate defendant. 2003 U.S. Dist. LEXIS 7134, *53. *See also RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 928-29 (N.D. Ill. 2002) (holding new employer liable for misappropriation of trade secrets because it hired employee of a

-8-

competitor who knew the competitor's trade secrets and placed the employee in a position with similar or identical duties to those performed while working for competitor).

Here, Defendants cannot credibly argue that they are able to obtain Paro's Confidential Information through public means. *Lifetec, Inc. v. Edwards*, 880 N.E.2d 188, 197 (Ill. App. 2007) (holding that although certain categories of customer-related information may be available in the public domain, the compilation and organization of the information in one place "is where the obvious confidentiality truly lies"). Kohan is a party to an agreement which requires him to maintain the confidentiality of Paro's Confidential Information and bars him from owning or working for a competitor of Paro during the twelve-month post-separation restricted period. Prior to his employment with Paro, Kohan had not previously worked at a company that delivers a platform of accounting, financing, bookkeeping and related professionals to clients. (*See* Kohan's LinkedIn profile, attached as Exhibit B to Complaint). Kohan did not simply accept a comparable position at a competitor; rather, he *created* a direct competitor of Paro within one month after his voluntary resignation.

Thus, because Kohan is the founder of FirmKey and its sole employee, it is "unlikely he has taken steps to prevent himself from disclosing [Paro's] trade secrets." *CZS Holdings LLC v. Kolbe*, 2021 U.S. Dist. LEXIS 88117, *11 (N.D. Ill. May 7, 2021) (holding that defendant's creation of a competing company supports the "circumstantial inference" that he "used/uses and disclosed/discloses trade secrets when creating and operating [competing business] under a theory of inevitable disclosure"); *see also Aon PLC v. Infinite Equity, Inc.*, 2021 U.S. Dist. LEXIS 167765, *37 (N.D. Ill. Sep. 3, 2021) (finding that allegations that defendants worked for a direct competitor and offered the same services as they did while employed by plaintiff were "sufficient to state a claim for misappropriation of trade secrets under a theory

of inevitable disclosure"); *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 U.S. Dist. LEXIS 71700, *18 (N.D. Ill. May 11, 2017) ("allegations on the direct competition between the parties, as well as the allegations on the employment breadth and similarity of [defendant's work] at the two companies, are enough to trigger the circumstantial inference that the trade secrets inevitably would be disclosed").

### c. Defendants' misappropriation entitles Paro to immediate injunctive relief

"Actual or threatened misappropriation may be enjoined" under the ITSA. 765 ILCS 1065/3(a). The scope and nature of the remedy must be tailored to fit the facts of a particular case and should be as broad as necessary to protect the rights of the plaintiff. *Nobel Biocare USA, Inc. v. Lynch*, 1999 U.S. Dist. LEXIS 23252, *9-10 (N.D. Ill. Sept. 16, 1999). Moreover, where a statute expressly authorizes injunctive relief, a plaintiff need only show the defendant's violation of the Act. *Illinois Bell Tel. Co. v. Lake County Grading*, 728 N.E.2d 1178, 1181 (Ill. App. 2000). The rules of equity requiring a showing of irreparable injury and a lack of an adequate remedy at law do not apply to an ITSA claim. *Id.; Lucini Italia*, 2003 U.S. Dist. LEXIS 7134, *54 ("[T]o the extent that Lucini's request for injunctive relief is based on Grappolini's violation of Lucini's trade secret[s], Lucini is not required to establish irreparable injury and a lack of adequate legal remedy."). Accordingly, Paro is entitled to immediate injunctive relief to end Defendants' misappropriation of the Company's trade secrets.

### 3. FirmKey has Tortiously Interfered with Paro's Contractual Agreement with Kohan

To succeed on the merits of its claim for tortious interference with a contract, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) that the defendant was aware of the contract; (3) that the defendant intentionally and

unjustifiably induced a breach of the contract; (4) that the wrongful conduct of the defendant caused a subsequent breach of the contract by the third party; and (5) that the plaintiff was damaged as a result. *Seip v. Rogers Raw Materials Fund, LP*, 948 N.E.2d 628, 638 (Ill. App. 2011); *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358 (Ill. 1998); *see Paul L. Pratt, P.C. v. Blunt*, 488 N.E.2d 1062, 1068 (Ill. App. 1986) (affirming injunction and holding that "plaintiff could properly seek to enjoin conduct of the defendants that allegedly interfered with its relationship with clients").

Paro and Kohan are parties to a valid contract – the Non-Compete Agreement – the terms of which preclude Kohan from, among other things, owning or working for a competitive business, soliciting Paro's clients, and misappropriating Paro's Confidential Information. FirmKey is well aware of the existence of the Non-Compete Agreement, as it was founded by Kohan. *See* Exhibits B and C to Complaint. Kohan is in breach of the terms of the Non-Compete Agreement, and FirmKey has induced and continues to induce the breach by operating a competitive business and employing Kohan.

### C. Paro Has No Adequate Remedy at Law

The standard for determining the adequacy of a legal remedy is "whether it is clear, complete, and as practical and efficient as the equitable remedy." *R.L. Polk & Co. v. Ryan*, 694 N.E.2d 1027, 1034 (Ill. App. 1998). A judgment for legal damages would not give Paro effective and complete relief from Kohan's and FirmKey's unfair competition. Given Kohan's and FirmKey's past and continuing conduct and the imminent threats, it is only logical that Kohan and FirmKey will continue to engage in unlawful conduct unless enjoined.

Even if Paro were able to demonstrate at a full trial on the merits the extent of its current damages, it is not possible to predict its customers' future business requirements. *Dam, Snell*

*and Taveirne, Ltd. v. Verchota*, 754 N.E.2d 464, 472 (Ill. App. 2001) (noting plaintiff's evidence at hearing that remedy at law was inadequate due to the "incalculable loss in revenues resulting from the loss of . . . clients"). A business' loss of competitive position is intangible, incapable of being measured. *Cross Wood Products, Inc. v. Sutter*, 422 N.E.2d 953, 957 (Ill. App. 1981) ("competitive disadvantage" is a "type of harm [] of intangible though very real nature which [is] not subject to measurement by any certain pecuniary standard . . . and thus cannot be classified as 'adequate'"); *A-Tech Computer Services v. Soo Hoo*, 627 N.E.2d 21, 27 (Ill. App. 1993) (holding that even assuming "pecuniary damages can be calculated, loss of competitive position is intangible, incapable of being measured").

In *Agrimerica, Inc. v. Mathes*, 524 N.E.2d 947, 953 (Ill. App. 1988), the Illinois Appellate Court explained that even if it could determine "the precise level of pecuniary damage" suffered by the plaintiff company, the court could neither ascertain nor compensate "the loss of competitive position sustained" as a result of the defendant's several-week-long attempts to lure away the company's customers. *See also Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (loss of goodwill, competitive position, and customer relationships constitute irreparable harm "oftentimes fatal to businesses, [that] cannot be readily calculated and cured by an award of monetary damages"). Here, a legal remedy alone cannot and will not prevent or cure the irreparable harm that Paro will suffer from Defendants' unchecked, unlawful conduct. Paro's loss of competitive position cannot be fully ascertained or remedied with monetary damages alone.

**D.      Paro Will Suffer Irreparable Harm Without Immediate Injunctive Relief**

"Irreparable injury" does not refer to injury that is "beyond repair or compensation in damages, but denotes transgressions of a continuing nature." *Leen v. Carr*, 945 F. Supp. 1151,

1157 (N.D. Ill. 1996) (holding that injunctive relief should be granted where a remedy at law would not provide a remedy which is as "clear, complete and as practical and efficient to the ends of justice in its prompt administration as an equitable remedy"). "Once a protectable interest is established, irreparable injury is presumed if the interest remains unprotected." *A-Tech*, 627 N.E.2d at 27. The greater a party's prospects of prevailing on the merits, the less compelling a showing of irreparable harm is required. *Lineback*, 546 F.3d at 502.

Indeed, Paro can properly obtain a preliminary injunction based on the threat alone that Kohan's and FirmKey's misconduct will cause the Company harm. *Gateway Sys. v. Chesapeake Sys. Solutions*, 2010 U.S. Dist. LEXIS 95470, *12 (N.D. Ill. Sept. 14, 2010) ("potential loss of customers and sales as a result of [defendant's] violation, and the threat that such losses will continue if an injunction is not granted, are sufficient grounds to justify preliminary relief"); *Gannett Outdoor of Chicago v. Baise*, 516 N.E.2d 915, 919 (Ill. App. 1987) ("[W]e believe that plaintiff need not show an actual loss of sales or profits before the trial court can grant a preliminary injunction. . . . [T]he evidence shows a legitimate threat to plaintiff's business interest and irreparable harm may result if this interest is not protected by a preliminary injunction."); *Office Electronics, Inc. v. Grafic Forms, Inc.*, 372 N.E.2d 125, 129 (Ill. App. 1978) ("While no evidence of sales actually lost to Grafic was presented at the hearing on the motion for preliminary injunction, there is no requirement that a court must wait until an injury occurs before granting relief."). Standing alone, a business' loss of competitive position is intangible, incapable of being measured. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 716 (N.D. Ill. 2009) ("endangerment of those [customer] relationships can also constitute irreparable harm").

Here, Kohan and FirmKey have engaged in a course of conduct which, at a very minimum, threatens Paro's operations, revenues and profits, client good will, and Confidential

-13-

Information.  Without an immediate injunction prohibiting Kohan and FirmKey from engaging in their misconduct, Paro's injuries will continue through the date of trial – when it simply would be too late to remedy the wrongs inflicted by them.

> **E.  Any Harm to the Defendants Does Not Outweigh the Harm to Paro, and the Public Interest Would Not Be Adversely Affected**

In connection with injunctive relief, courts are tasked with "balancing harms" to the parties – specifically, whether Paro will suffer greater harm without the injunction than Defendants will suffer if it is issued.  *Stuller, Inc. v. Steak N Shake Enters.,* 695 F.3d 676, 678 (7th Cir. 2012); *Buzz Barton & Assoc., Inc. v. Giannone*, 483 N.E.2d 1271, 1278 (Ill. 1985). Courts use a "sliding-scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position."  *In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002).  However, such an analysis may not be required or warranted in this case.  *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, (7th Cir. 2002) ("After a court has considered these three issues, it must weigh the potential harms (although such balancing may be inapplicable if [defendant's] violation of [plaintiff's] rights was willful)[.]"); *see also Preferred Meal Sys., Inc. v. Guse,* 557 N.E.2d 506, 517 (Ill. App. 1990) ("It is well-established in Illinois that the [balancing harms] doctrine is inapplicable where a defendant's actions are done with full knowledge of the plaintiff's rights and with an understanding of the consequences which might ensue.").

In any event, even if the potential "harms" were weighed, the harm of denying Paro injunctive relief far outweighs the harm Defendants may endure if restrained from unfairly competing and taking and using the Company's confidential and trade secret information. Moreover, the public interest would not be adversely affected by the injunction.  Paro seeks only to enjoin Defendants' intentional unlawful activity.  If an injunction is not granted, Paro faces the

reality of significant financial loss. To permit Defendants to continue their current practices would be to endorse their wrongdoing and send a regrettable message that there are no consequences for unlawful conduct.

## III.    CONCLUSION

For the foregoing reasons, this Court should issue a temporary restraining order and preliminary injunction as requested in Paro's contemporaneously filed Emergency Motion, on such terms as requested and on such other terms as this Court deems just and equitable.

Dated:  July 10, 2023                                    Respectfully submitted,

                                                         **ADMIIN INC. d/b/a PARO INC.**


                                                         By: /s/  *Chad W. Moeller*
                                                                  One of Its Attorneys

Chad W. Moeller (cmoeller@nge.com)
Sonya Rosenberg (srosenberg@nge.com)
Collette A. Woghiren (cwoghiren@nge.com)
NEAL GERBER & EISENBERG LLP
2 N. LaSalle St., Suite 2200
Chicago, Illinois 60602
(312) 269-8000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that she served a copy of the foregoing Plaintiff's

Memorandum of Law in Support of Its Emergency Motion for Temporary Restraining Order and

Preliminary Injunction on:

Julie Levinson Werner
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
jwerner@lowenstein.com

Luke Kohan
FirmKey Solutions LLC
5 Hamlet Drive
Commack, NY 11725
Lukekohan5@gmail.com

FirmKey Solutions LLC
5 Hamlet Drive
Commack, NY 11725

by email, FedEx Overnight  and messenger on this 10th day of July, 2023.


/s/ *Collette A. Woghiren*
One of the Attorneys for Admiin Inc. d/b/a Paro Inc.

35378684.5

-16-