IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMIIN INC. d/b/a PARO INC., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:23-cv-04430 |
| v. | ) ) ) |
| LUKE KOHAN an individual, and FIRMKEY SOLUTIONS LLC, a Minnesota limited liability company, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW
OPPOSING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff's motion for a temporary restraining order and preliminary injunction should be denied for a plethora of reasons that make a likelihood of success on the merits improbable at best and certainly not strong, as the law requires.

First, Admiin Inc. d/b/a Paro Inc. ("Paro" or "Plaintiff") and FirmKey Solutions LLC ("FirmKey") differ in the services provided. Both parties market and operate themselves differently as well, making the non-compete agreement inapplicable and not violated.

Second, the non-compete agreement is unenforceable given its combination of unfathomably broad restrictive covenants, such as geographic scope, and its overbroad and ambiguous definition of prohibited activities.

Third, Mr. Kohan and FirmKey ("Defendants") have not misappropriated anything and do not possess any of Paro's purported trade secrets. For that reason, Plaintiff has provided no evidence of Defendants' alleged trade secret misappropriation.

71595745;1

Fourth, Defendants are not soliciting any of the Plaintiff's clients. Plaintiff has provided no evidence of a breach of the non-solicitation agreement.

Fifth, Defendants previously agreed to most of the requests in the TRO and are willing to agree to most of the requests to this day.

"Injunctive relief is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.' In deciding whether to grant preliminary injunctive relief, a court must consider four traditional criteria," including whether the plaintiff has a reasonable likelihood of success on the merits. *Klinger v. Conan Doyle Est., Ltd.*, 988 F. Supp. 2d 879, 894 (N.D. Ill. 2013), aff'd, 755 F.3d 496 (7th Cir. 2014); *Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 907 (N.D. Ill. 2021) ("When considering a motion for temporary restraining order, the Court must employ the same test as a request for a preliminary injunction: the plaintiff has the burden to show (1) a likelihood of success on the merits … The first factor—'likelihood of success on the merits'—requires the plaintiff to make a 'strong showing that she is likely to succeed on the merits' of her claim; a mere 'possibility of success is not enough' to warrant emergency relief"). For the aforementioned five reasons, Paro has not established that it has a likelihood of success here and its motion should be denied, both in the temporary restraining order and preliminary injunction context.

I. **PARO CANNOT SUCCEED ON THE MERITS**

Paro has not established a strong showing that it is likely to succeed on the merits for several reasons, each of which on its own is sufficient grounds for denial here.

A. **Mr. Kohan and FirmKey Have Not Breached the Non-Compete Agreement**

The non-compete agreement in question states as follows:

> During the Restricted Period (as defined below*), I will not, anywhere in the Restricted Territory (as defined below*), without the Company's prior written consent, directly or

> indirectly, alone or as a partner, member, manager, owner, joint venturer, officer, director, employee, consultant, agent, contractor, stockholder or in any other capacity of any company or entity, engage in the Business, have any financial interest in any company or entity engaging in the Business or make any loans to any company or entity engaging in the Business. For purposes of this Agreement, the term "**Business**" means (a) the provision of outsourced financial services, including bookkeeping and accounting, financial analysis and CFO strategy services, or (b) the provision, development, marketing, sale or maintenance of products or services which are substantially similar to those developed, marketed, distributed, sold, maintained or otherwise provided by, or actively planned to be developed, marketed, distributed, sold, maintained or otherwise provided by the Company during the term of my employment with the Company.

Exhibit A to Complaint at ¶ 4.

Paro and FirmKey identify, market, and operate differently and are therefore not competitors. Exhibit A, Declaration of Luke Kohan, ¶ 2. ("Ex. A, Kohan") Thus, neither Mr. Kohan nor FirmKey are in violation of the non-compete agreement.

Paro is an artificial intelligence-powered marketplace that delivers finance and accounting solutions to businesses through a combination of expert fractional talent, data-driven tools, and guiding insights via its proprietary AI-powered platform. Ex. A, Kohan ¶ 3.

Mr. Kohan's employment consisted of two business lines. The first was selling value in leveraging Paro's artificial intelligence and proprietary matchmaking algorithm to match companies with the platform's accounting and finance freelancers. (the "Outbound Direct" team, which no longer exists.) The second was providing staff augmentation resources (1099 and W2) to public accounting firms. Ex. A, Kohan ¶ 4.

This is far different from FirmKey's business. FirmKey is an agency conducting business development on behalf of its small group of independent, boutique accounting teams ("Vendors").

71595745;1

Mr. Kohan and Firmkey secure engagement opportunities for their Vendors that meticulously align with his Vendors' industry experiences and technical specialties. Ex. A, Kohan ¶ 5.

Paro and FirmKey are very different. Paro sells its proprietary AI marketplace while FirmKey has no technology driven process. Paro provides 1099/W2 staff augmentation for public accounting firms, FirmKey connects companies in need of an accounting team with FirmKey's Vendors. Paro's sales org is predominantly 'Inbound' (i.e., companies and firms submit their interest), Mr. Kohan and Fimkey are entirely 'Outbound' (i.e., cold calling, emailing, and selling to secure opportunities). Ex. A, Kohan ¶ 6.

For these reasons, there is no violation of the non-compete agreement.

**B.     The Non-Compete Agreement is Not Enforceable**

Whether a noncompetion clause is enforceable is a question of law and such clauses are closely scrutinized. *Bishop v. Lakeland Animal Hosp., P.C.*, 268 Ill. App. 3d 114, 117, 644 N.E.2d 33, 35 (1994). They are not favored and are strictly construed against the employer. *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 811 (Ind. Ct. App. 2000). Restrictive covenants must be reasonable in term of scope to be enforceable. *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 982 (C.D. Ill. 2003). The noncompete agreement at issue here is not enforceable because it is far too broad in both the prohibited activity and the geographic scope, and because it is insolubly ambiguous.

1. The Prohibited Activity is Overly Broad and Insolubly Ambiguous

The activity that is prohibited by the non-compete agreement is as follows.

> "**Business**" means (a) *the provision of outsourced financial services*, including bookkeeping and accounting, financial analysis and CFO strategy services, or (b) the provision, development, marketing, sale or maintenance of products or services, which are *substantially similar* to those developed, markets distributed, sold, maintained or otherwise provided by, or actively planned to be developed, marketed, distributed,

> sold, maintained or otherwise provided by the Company during the term of my employment with the Company. (emphasis added)

Exhibit A to Complaint at page 5, ¶ 4.

This prohibited activity is problematically broad and insolubly ambiguous. The phrase "the provision of outsourced financial services" covers a vast universe of activities and, if enforced, would prevent Mr. Kohan from taking virtually any job in his chosen area of expertise. *See AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, ¶ 35, 44 N.E.3d 463, 472-73 (1990) (scope of activities that barred defendant from earning a living for all professional liability insurance products and services is unenforceable); *Dryvit Sys., Inc. v. Rushing*, 132 Ill. App. 3d 9, 14, 477 N.E.2d 35, 39 (1985) (the agreement is unfair as it makes no attempt to reasonably limit the restrictions, thereby placing the employee in the position of peril); *Distributor Service, Inc. v. Stevenson et al.,* 16 F.Supp.3d 964, 972-973 (S.D.Ind. 2014) (the scope of activities is unreasonable and unenforceable in that "Competitive Business Activities" covers any type of activity that the party would engage in for a competitor)*; Clark's Sales & Serv., Inc. v. Smith,* 4 N.E.3d 772, 782 (Ind. Ct. App. 2014) (the "services competitive" restriction is overly broad, onerous and an undue restriction); *MacGill v. Reid*, 850 N.E.2d 926, 932 (Ind. Ct. App. 2006) (the clause "own, manage, or materially participate in any business substantially similar" is unenforceable); *Lanmark Technology, Inc. v. Canales,* 454 F.Supp.2d 524, 529 (E.D. Va. 2006 (finding a restriction breathtakingly and excessively broad when it prevented an employee from assisting a competitor to perform any services similar to services performed by the employer that relates to any contract or project currently being performed by the employer, any business opportunity the employer is pursuing, and any person or organization for which employer is or has performed services).

The phrase "substantially similar" is the definition of ambiguous and provides no guidance on what activities might be prohibited. It is capable of many meanings. Because the prohibited activities are too broad and ambiguous the non-compete agreement is unenforceable. *Bishop*, 268 Ill. App. 3d at 117 (a contract is ambiguous if it is capable of more than one meaning); *Unisource*, 244 F.Supp.2d at 982 (the contract is ambiguous and unintelligible and therefore unenforceable); *Lanmark,* 454 F.Supp.2d at 529 (where a noncompete clause is ambiguous, that is, it is susceptible to two or more differing interpretations, one of which is functionally overbroad, and thus unenforceable, the clause fails).

2. The Geographic Territory is Virtually Unlimited

The geographic scope of the agreement is virtually unlimited and also renders the non-compete agreement unenforceable.

The definition of "Restricted Territory" in the agreement provides:

> For purposes of this Agreement, the term "**Restricted Territory**" shall mean the United States and each other country, province, state, city or other political subdivision in which the Company carries on, had carried on the Business during the term of my employment and/or the Restricted Period.

Exhibit A. to Complaint at ¶ 8 J.

This broad geographic scope would prevent the Defendants from doing business virtually anywhere and is unlimited and therefore not enforceable. "If the scope of the covenant is broader than is necessary to protect the goodwill of the business sold, the covenant is invalid." *Gutreuter v. Fiber Bond Corp.*, 710 F. Supp 227, 232 (N.D. Ill. 1989)). There, the Court found a non-competitive agreement unenforceable and overbroad because it precluded a party from seeking employment in thirteen specific states and the District of Columbia and parts of thirteen other states and parts of Canada. *Id.* The geographic scope here is much broader than the scope found

71595745;1

unenforceable in that case. *See also Assured Partners*, 44 N.E. 3d at 473 (geographic scope held to be unreasonable that prohibits activity anywhere in the United States or its territories); *Callahan v. L.G. Balfour*, 179 Ill. App. 3d 372, 379, 534 N.E.2d 565, 569 (1989) (geographic scope of Chicago and seven counties overly broad); *Dryvit System*, 477 N.E.2d at 438 (very broad geographical scope of the Continental United States is clearly unreasonable.); *Buffkin v. Glacier Grp.*, 997 N.E.2d 1, 13 (Ind. Ct. App. 2013) (a restriction prohibiting services anywhere in the continental United States exceeds the bounds of reasonableness).

        C.      **Paro Has Provided No Evidence of Misappropriation**

The only trade secrets that Paro refers to in its motion are "customer lists and other client-related information." DI 8 at 6. But Paro has cited no evidence of Defendants' taking and using this information or having the ability to obtain any such information, instead simply arguing that disclosure is inevitable. DI 8 at 8. Paro has not even tried to establish with any evidence other than lawyer argument that the parties are in direct competition, that Mr. Kohan has similar responsibilities at FirmKey that he had at Paro (which he does not), or that FirmKey has not taken steps to prevent Mr. Kohan from using the alleged trade secrets, as it argues is required by *Lucini Italia Co. v. Grappolini,* 2003 U.S. Dist. LEXIS 7134. DI 8. Paro cannot rely on speculation and conjecture, with no evidence, to establish a likelihood of success on its trade secret misappropriation claims even if it is relying on inevitable disclosure.

        D.      **Defendants Have No Paro Trade Secrets and Are Not Soliciting Paro Customers**

Mr. Kohan has sworn under oath that he and his company have no Paro trade secrets or confidential information and that he and FirmKey are not soliciting Paro clients. This should in itself dispose of the trade secret and non-solicitation issues for purposes of this motion, if not certainly make Paro unlikely to succeed on these issues.

**E.      A Company Cannot Tortiously Interfere With Anything**

Paro iargues that the company FirmKey itself is tortiously interfering with Paro's contracts. DI 8 at 10-11. But how can a company be aware of anything or tortiously interfere with anything? It cannot, and Paro is unlikely to succeed on this cause of action.

Moreover, what FirmKey offers could not possibly be done at Paro, as the services that FirmKey provides no longer exist at Paro (formerly known as OUTBOUND DIRECT.). Ex. A, Kohan ¶ 7. The only options Paro offers are staff augmentation or inbound direct sales, which prohibit one from creating new leads, cold calling, cold emailing, and which is the antithesis of FirmKey's offerings to its prospective clients and vendors. Ex. A, Kohan ¶ 7. How can one compete with something that does not exist?

**II.      THE COURT SHOULD IMPOSE A BOND REQUIREMENT**

Federal Rule of Civil Procedure 65(c) states that the court may grant a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper. Here, Plaintiff has ignored this requirement and Defendants submit that if the Court enters a temporary restraining order that a bond in the amount of $30,000.00 should be required. If the Court enters a preliminary injunction, the bond amount should be raised to an amount sufficient to cover the period of the preliminary injunction. These amounts cover the potential damage to Mr. Kohan and FirmKey if they should be precluded from conducting their business.

**III.      DEFENDANTS AGREE TO MOST OF WHAT IS SOUGHT HERE**

Despite the fact that the motion is without merit, and although Mr. Kohan's previous efforts to alleviate the Plaintiff's concerns were not entertained, the Defendants are willing to agree to all but ¶ 8 of the relief sought in the preliminary injunction motion, with some clarification on issues

such as what customers cannot be solicited. They have discussed this with opposing counsel but an agreement has not been reached.

### IV. NO EXPEDITED DISCOVERY IS NECESSARY

In seeking expedited discovery, Plaintiff claims that the parties are direct competitors. Not true. It claims that the Defendants have obtained its confidential information. Not true. No expedited discovery is necessary, as based on this filing neither a temporary restraining order or a preliminary injunction should be granted, obviating the need for any expedited discovery.

### V. CONCLUSION

For all these reasons, Paro's motion for a temporary restraining order and a preliminary injunction should be denied.

Date: July 14, 2023

Respectfully submitted,

/s/ *Thomas G. Pasternak*
Thomas G. Pasternak
Akerman LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900

Attorneys for Defendants,
*Luke Kohan and*
*FirmKey Solutions LLC*

71595745;1

## CERTIFICATE OF SERVICE

I certify that on July 14, 2023 I filed a true and correct copy of the foregoing **DEFENDANT'S MEMORANDUM OF LAW OPPOSING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the court using the ECF system, which will provide notice and a copy to counsel of record:

> Chad W. Moeller
> Sonya Rosenberg
> Collette A. Woghiren
> NEAL GERBER & EISENBERG LLP
> 2 N. LaSalle St., Suite 2200
> Chicago, IL 60602
> cmoeller@nge.com
> srosenger@nge.com
> cwoghiren@nge.com

/s/ *Thomas G. Pasternak*
Thomas G. Pasternak

71595745;1