# EXHIBIT 1

# ADMIIN INC. d/b/a PARO INC.
# v.
# LUKE KOHAN and
# FIRMKEY SOLUTIONS LLC

July 17, 2023

# Mr. Kohan and FirmKey are not in breach of Paro's non-compete agreement

Paro's non-compete is:

1) ==Unenforceable==: It is overbroad, ambiguous, and a violation of Mr. Kohan's right to earn a living

2) ==Not Violated==: "Business" (b): Paro and FirmKey are different in how they identify, operate, and market themselves

3) ==Not Violated==: "Business" (a): FirmKey's services do NOT fall under Paro's definition of "Business"

2

# The non-compete agreement is Unenforceable

The non-compete agreement's **combination** of restrictive covenants, particularly regarding geographic scope and "Business" activities and for the duration thereof are overbroad and ambiguous. The non-compete agreement is a threat to Mr. Kohan's right to earn a living as set forth by both Congress and The Illinois General Assembly's "Right to Earn a Living Act":

Congress:

1. The right of individuals to pursue a chosen profession, free from arbitrary or excessive government interference, is a fundamental civil right.

2. The freedom to earn an honest living traditionally has provided the surest means for economic mobility.

The Illinois General Assembly:

"(e) It is in the public interest: (1) to ensure the right of all individuals to pursue legitimate entrepreneurial and professional opportunities to the limits of their talent and ambition and (2) to provide the means for the vindication of this right."

Alec.org

Ilga.gov

3

## Non-Compete is Unenforceable: Geographic Scope

The "restricted territory" prohibits Mr. Kohan from conducting **any activities related to finance and accounting**, of any sort, **not only across the entire United States**, but "and *each other country, province, state, city or other political subdivision*" in which the Company carries on during the (**12-month**) Restricted Period.

If enforced, the restriction rules that Mr. Kohan is to **do business only internationally** and further reaches lengths that **may even prohibit Mr. Kohan from earning a living in an international country of his choice** (as in this instance, Paro 'carries on' in Portugal, UK, and more). OR he is required to change careers to that of something unrelated to his profession, trade, and expertise.

Paro's ambitions to monopolize its stake across multiple industries, disciplines, and countries comes solely at the expense of its current and former employees' rights.

*Case Law: Dryvitt, Buffkin, AssuredPartner*

# Non-Compete is Not Violated: "Business" (a)

Paro's noncompete agreement defines "**Business**" as: (a) the *provision* of outsourced financial services, including bookkeeping and accounting, financial analysis and CFO strategy services.

- Mr. Kohan and FirmKey **do not provide outsourced financial services**.
- Mr. Kohan and FirmKey **do not provide bookkeeping, accounting, financial analysis, or CFO strategy services**.

A breach in "Business" is to imply that Mr. Kohan is himself an accountant**, which he is not**, and that FirmKey is an accounting firm**, which it is not**.

*Given neither Mr. Kohan nor FirmKey; identify, market, or operate either as an accounting professional nor as an accounting firm, neither Mr. Kohan nor FirmKey are in breach of the non-compete agreement.*

5

## Non-Compete is Not Violated and is Ambigous: "Business" (b)

Paro's noncompete agreement defines "**Business**" as: (b) the provision, development, marketing, sale or maintenance of products or services which are *substantially similar* to those developed, marketed, distributed, sold, maintained or otherwise provided by, or actively planned to be developed, marketed, distributed, sold, maintained or otherwise provided by the Company during the term of my employment with the Company.

|  | **Paro** | **FirmKey** |
|---|---|---|
| **Provision** | Product: AI-Powered Marketplace / Platform<br>Service: Staff Augmentation for CPA Firms | Product: None<br>Service: Introduce businesses & independent partners |
| **Development** | Product: AI-Powered Marketplace / Platform<br>Service: Self-Service Checkout | Product: None<br>Service: Outbound |
| **Marketing** | Product: Proprietary Matchmaking Algorithm<br>Service: Proprietary Matchmaking Algorithm | Product: None<br>Service: Convenience |
| **Sale** | Product: Technology Driven AI Matchmaking<br>Service: Platform Assistance via Inbound | Product: None<br>Service: Convenience in Accounting via Outbound |
| **Maintenance** | Product: Enhanced Machine Learning<br>Service: Platform | Product: None<br>Service: Satisfy Businesses & Vendors |
| **Active Plans** | Product: "Become Market Leader in Staff Aug"<br>Service: Self-Service Checkout | Product: None<br>Service: Satisfy Businesses & Vendor Requests |

6

## Paro- What is their business model?

Headquartered in Chicago, Paro is a rapidly growing technology company harnessing the power of its artificial intelligence-powered marketplace. Through its proprietary AI-powered platform, large network of expert fractional talent, data-driven tools and guiding insights; Paro matches clients with the best-fit finance and accounting expert to solve problems and drive growth.

- "Paro helps CPA firms overcome capacity challenges through a flexible, fractional U.S.-based staffing model. Leveraging fractional, on-demand accounting experts can help firms address tax season needs by setting them up with the right approach while growing their business." (PRN)

- "With more than 300,000 accountants and auditors having quit in the past two years, and fewer new CPA candidates entering the industry, accounting firms are facing an uphill battle that will require them to stretch and strain to meet demands," said Alex Loewenstein, General Manager, Paro for CPA Firms.
    - "These strategies, in particular fractional talent, can help accounting teams combat an incredibly stressful busy season and allow firms to grow now and into the future."" (Yahoo! Finance)

- "We're well on our way to becoming the clear market leader in the US-based staff augmentation space for firms…"
    - *Jason Nahani, Chief Commercial Officer and Head of Inbound Sales – LinkedIn Post (July 13, 2023)*

7

# FirmKey – What is their business model?

FirmKey is an agency conducting business development on behalf of its small group of independent, boutique accounting teams ("Vendors").

Aside from the basic and necessary CRM technology platforms (e.g., Salesforce), FirmKey operates on pen, paper, people, and phones to identify & secure engagement opportunities for its Vendors.

8

# Case Law – Overbroad Prohibited Activity

- "Substantially similar" activity is overbroad
  - *MacGill*

- "Competitive Business Activity" is overbroad
  - *Distributor Service*

- Entire line of professional liability insurance is overbroad
  - *Distributor Service*

9

## 'Tortious Interference' with Contract Against FirmKey

- "**FirmKey knew** or should **have known** of Paro's contractual relationship with Kohan but wrongfully and unjustifiably **interfered** with the relationship by causing Kohan to.."
- "As a result of **FirmKey' actions**, Kohan has breached the terms of the Non-Compete Agreement."

To be tortious is to imply; an action is taken, there is conscience knowledge of, a behavior, or there is an ability to physically interference with; something or someone.

FirmKey is not a person. FirmKey is not alive. FirmKey cannot possibly have conscience, thought, intent, ability to perform or act.

To accuse FirmKey of tortious interference is to imply that FirmKey is to be capable of 'doing' anything. Thus, FirmKey cannot have tortiously interfered.

10

## Protecting a Legitimate Business Interest

- "It is important for the employer to **act quickly** when it learns of a suspected violation of its non-compete agreements or other restrictive covenants. The need for **swift action** has a number of benefits including demonstrating that the employer has a legitimate business interest and takes enforcement of its non-compete agreements seriously. To evaluate whether an employer has a legitimate business interest, courts often take into account **how quickly the employer acted** after learning of the violation. Illinois courts routinely find that employers who **drag their feet** in seeking an injunction forfeit their right to such relief. The courts reason that *the business must not be at risk of suffering irreparable harm or else the employer would have acted faster.*"

**Timeline:**

- May 9: Mr. Kohan publicly announces formation of FirmKey
- May 15: Cease and Desist
- May 30: Cease and Desist #2
- June 26: Cease and Desist #3
- July 11: Filed for Litigation

**Time Passed:**

- 15 Days: Amount of time passed between issuing Cease & Desist #3 and filing litigation
- 42 Days: Amount of time passed between issuing Cease & Desist #1 and Cease & Desist #3
- 57 Days: Total amount of time passed between issuing Cease & Desist #1 and Paro's litigation filing
- *==63 Days==*: Total amount of time passed between (presumably) finding out about Mr. Kohan's involvement with FirmKey and Paro's litigation filing

11

# FirmKey's Attempts to Resolve Matters

- Mr. Kohan's website revisions at the request of Paro's Council (May 19)

- Mr. Kohan's email(s) to Paro's Cofounders, Michael Burdick and Dan Wywrot (May 22 and May 25)

- Paro's Proposal: Mr. Kohan's accepting and compliance of / Paro's failure to follow through (May 23 – May 26)

12

## Protecting a Legitimate Business Interest: <u>Selective Enforcement</u>

- Paro "cannot establish a critical prong in its case - namely, that it is merely trying to protect and enforce a legitimate business interest - because if it were so, then the former employer would have been enforcing it across the board rather than specifically targeting this defendant and not other former employees." (Surgidev Corp v. Eye Technology, Inc.,)

<mark>Former Employees who have joined competitors and who have not been subject to litigation:</mark>

- Randi Jakubowitz:
    - Paro's VP of People (February 2019  November 2020)
    - Toptal's Director of People (November 2020 – January 2022)
        - Toptal is (arguably) Paro's #1 competitor: "Toptal is an exclusive network of the top freelance software developers, designers, finance experts, product managers, and project managers in the world. Top companies hire Toptal freelancers for their most important projects."
- Andrew (Drew) Bonaventura:
    - Paro's Financial Consultant, Senior Account Executive, Strategic Account Executive – New Hire Team Lead (March 2020-April 2023)
    - Makosi's Client Relationship Director (April 2023-Present)
        - Makosi is a Paro competitor competing with Paro's P4CPA Team: "A scalable & flexible solution to meet your firm's unique needs". "Makosi is how professional services firms take on more work without taking on more full-time employees. With world-class talent on-demand, #NowTheresRoomToGrow."

# Amended Illinois Labor Laws (January 2022) – Contextual Purposes Only

- <mark>Informing Employees</mark>: For a covenant not to compete or covenant not to solicit to be enforceable, **an employer must (1) advise the employee in writing to consult with an attorney before entering into the covenant;** and (2) provide the employee with at least 14 calendar days to review the covenant.

- <mark>Remedies</mark>**:** If an employee prevails on a claim to enforce a covenant not to compete or a covenant not to solicit in a civil action or arbitration *filed by* an employer, **the employee is entitled to collect from the employer all costs and all reasonable attorney's fees regarding such claim to enforce a covenant not to compete or a covenant not to solicit.** The Act also authorizes the Illinois Attorney General to initiate or intervene in a civil action to *obtain "appropriate relief."*

- <mark>Threshold</mark>: No employer shall enter into a covenant not to compete with any employee unless the *employee's actual or expected annualized rate of earnings exceeds $75,000 per year*.

- **Reasonableness Test**: (4) the covenant does not impose **undue hardship on the employee**; and (5) the **covenant is not injurious to the public**.

[Ilga.gov](Ilga.gov)

14

# 2023 Non-Compete Climate in the United States

- FTC federal ban of non-competes to vote in 2024
- The New York State legislature has passed a bill banning almost all non-compete agreements for all workers, regardless of their salary level or job function

15

## Non-Solicitation & Trade Secrets: Claims and Corresponding Evidence

1. 'Kohan has threatened to misappropriate or will inevitably misappropriate trade secrets and confidential information maintained by Paro in this district'
   - **No evidence submitted in verified complaint**

2. 'There is little dispute that Kohan viewed Paro as a training ground, and he is now using, or will use, the Confidential Information he learned at Paro in violation of contractual and other legal obligations to Paro'
   - **No evidence submitted in verified complaint**

3. 'The inevitable disclosure and use of Paro's Confidential Information will allow FirmKey to gain a substantial unfair advantage over Paro.'
   - **No evidence submitted in verified complaint**

4. 'As a result of Kohan's and FirmKey' actions, Paro has suffered irreparable harm for which it has no adequate remedy at law. Unless enjoined, Kohan and FirmKey will continue to harm Paro's business, causing further irreparable harm to Paro for which there is no adequate remedy at law.'
   - **No evidence submitted in verified complaint**

5. 'As a result of Kohan's and FirmKey' willful and malicious actions, Paro has also been, and continues to be, substantially injured or damaged.'
   - **No evidence submitted in verified complaint**

6. 'Any Harm to the Defendants Does Not Outweigh the Harm to Paro, and the Public Interest Would Not Be Adversely Affected'
   - **No evidence submitted in verified complaint**

16

# Plaintiff has Failed to Establish Criteria for Preliminary Injunction

In *Winter v. NRDC, Inc.*, the Supreme Court explained that a "plaintiff seeking a preliminary injunction <u>must</u> establish that:

(1) he is likely to succeed on the merits,
(2) that he is likely to suffer irreparable harm in the absence of preliminary relief,
(3) that the balance of equities tips in his favor, and
(4) that an injunction is in the public interest."

**Paro has failed to support why they would succeed on their claims**

**Paro has failed to support how and why they are to suffer irreparable harm**

**Paro has failed to support establishing its harm is greater than the Defendant's harm**

**Paro has failed to support that injunction is in the public interest**

17

# ADMIIN INC. d/b/a PARO INC.
# v.
# LUKE KOHAN and
# FIRMKEY SOLUTIONS LLC

July 17, 2023