IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMIIN INC., d/b/a PARO, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>v.<br><br>LUKE KOHAN, an individual, and FIRMKEY SOLUTIONS, LLC, a Minnesota limited liability company,<br><br>      Defendants. | Case No. 1:23-cv-04430<br><br>Judge Franklin U. Valderrama<br><br>Magistrate Judge M. David Weisman |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
RULE 65 MOTION FOR PRELIMINARY INJUNCTION**

Defendants' Opposition is more noteworthy for what it ignores than for what it addresses. Notably, Kohan and FirmKey do not address evidence in the record which establishes that FirmKey and Paro are direct competitors. As but a few examples, Defendants do not dispute, much less rebut, the following evidence:

- Kohan admits that he was able to start FirmKey based on the industry experience he gained at Paro (Kohan Dep., 107);

- Kohan testified that, like Paro, FirmKey "matches" clients in need of finance-related services with industry experts (although FirmKey refers to experts as "vendors") (*Id.*, 105-06);

- Identical to the services that Paro offers, FirmKey also offers CFO-related, Technical Accounting, Audit, Tax, Financial Planning & Analysis (FP&A), ERP Implementation, Transaction Advisory, and Bookkeeping services through its network of vendors (Kohan Dep. Ex. 7 at p. 6; Kohan Dep., 159; Burdick Decl., ¶¶ 3-4);

- FirmKey's own website mirrors the services offered by Paro ((Burdick Decl. ¶¶ 3-4 and Dkt. 1-10);

- Kohan concedes that Paro offers the same services which are reflected on FirmKey's website (Kohan Dep., 156-57, 203);

- Kohan identified FirmKey's competitors as Upwork, TopTal and Makosi – the same companies (in addition to FirmKey) which Paro views as its (Paro's) competitors (*Id.* 168; Burdick Decl., ¶ 5).

At most, Defendants contend that FirmKey's business methods and corporate structure are "different" than Paro, which even if true, do not make Paro any less of a "competitor." Defendants do not – and cannot – refute that the companies are direct competitors that *operate* in the same industry, serve the same clientele, and provide the identical type of finance-related services by matching clients and experts.

As further explained below, Paro is entitled to injunctive relief and without it, the Company will suffer irreparable harm. Try as they might, Defendants fail to contradict that Paro is likely to succeed on the merits of its breach of contract and tortious interference claims. Accordingly, the Court should enjoin Kohan from breaching the non-competition and non-solicitation restrictions in the Non-Competition Agreement and enjoin FirmKey from tortiously interfering with Paro's and Kohan's contractual relationship.

## ARGUMENT

**A. Defendants Fail to Rebut the Evidence that Kohan is Breaching the Terms of the Non-Competition Agreement**

In its Supplemental Memorandum, Paro established that: (1) the Non-Competition Agreement is reasonable and enforceable, and (2) Kohan has breached and continues to breach Sections 4 and 7(b) of the Agreement. The following discussion explains why, notwithstanding Defendants' arguments to the contrary, Paro is entitled to preliminary injunctive relief.

### 1. The Non-Compete Clause is Reasonable and Enforceable

Paro demonstrated that the non-compete clause is reasonable and enforceable because it (a) is no greater than is required for the protection of Paro's legitimate business interests; (b) does not impose an undue hardship on Kohan; and (c) is not injurious to the public. Paro

supported each of its assertions with facts and controlling case law. Each of Defendants' arguments in response fails.

*First,* Defendants argue that the term "Business" is "problematically broad and irreconcilably ambiguous" (Opposition at 8), but they fail to address Kohan's own testimony in which he concedes that he understands the nature of the business in which Paro engages. *E.g.*, Kohan Dep., 84-85. Thus, the term "Business" must be interpreted in the context of the parties' consensus about the nature and scope of Paro's operations. Moreover, the restriction does not prevent "Mr. Kohan from taking virtually any job in his chosen area of expertise." Opposition at 8. The Agreement does not, for example, prevent Kohan from working in the financial services industry. Nor does it prevent him from working in all "marketplace" industries – only the provision of finance-related services whereby companies match clients and experts. *E.g.*, *Health Professionals, Ltd. v. Johnson*, 791 N.E.2d 1179 (Ill. App. 2003) ("Although a broad interpretation of this [non-compete] language would encompass *any* type of employment arrangement, we believe the restrictions must be construed in light of the entire agreement and its purpose.") (emphasis in original); *Bloomington Urological Assocs., SC v. Scaglia*, 686 N.E.2d 389 (Ill. App. 1997) (the term "practice of medicine" must be interpreted in context).

*Second,* the cases cited by Defendants are both distinguishable and inapplicable. As Paro explained in its Supplemental Memorandum, the court in *AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, deemed the non-compete provision to be overbroad because it prevented defendant from selling *any* professional liability insurance, including to physicians, accountants and non-attorneys, even though he had previously sold this type of insurance exclusively to attorneys. Similarly, the court in *Dryvit System, Inc. v. Rushing* held that the restriction was overbroad because, among other things, it prevented defendant from soliciting companies that

had never been a customer of his former employer and from being employed in a position that was substantially different from his role while at his prior employer. 132 Ill. App. 3d 9, 12 (1st Dist. 1985). The remaining cases related to Defendants' "prohibited activity" argument are inapplicable as they are decisions issued in other jurisdictions and none of the cases apply Illinois law. Opposition at 8. Additionally, the Court should reject Defendants' assertion that the non-compete clause is ambiguous because, again, Kohan himself testified that he understands the nature of the business in which Paro engages, and he concedes, as he must, that FirmKey offers the same services as Paro. Kohan Dep., 84-85, 105-06, 151-54, 157-59, 187, 203; Kohan Dep. Exs. 6, 7 and 9. Further, the term "substantially similar" is not ambiguous, as it is used to further define the term "Business." Kohan Dep. Ex. 2 at ¶ 4.

*Finally,* the geographic of Section 4 of the Agreement is reasonable and co-extensive with the geographic reach of Paro. This geographic scope is routinely enforced in Illinois. Defendants attempt to distinguish Paro's cases fail as they have not – and cannot – show that the *proposition of law* regarding reasonable geographic scope is incorrect. Instead, they try to muddy the waters by cherry-picking facts of each case. But none of those facts changes the well-established law in Illinois that nationwide restrictions – and in fact non-compete restrictions lacking *any* stated geographic territory – are reasonable and enforceable. *E.g., TLS Management Marketing Services, LLC v. Mardis Financial Services, Inc.,* 2016 U.S. Dist. LEXIS 165864, *8 (S.D. Miss. Nov. 30, 2016) ("Illinois courts have even approved non-competition covenants that lack geographic limitations when the employer's business activities are nationwide") (applying Illinois law); *Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E.2d 1273, 1281 (1st Dist. 1985) ("…courts generally look to whether the restricted area is coextensive with that in which the employer is doing business…and have upheld as reasonable even those covenants

containing no geographic limitation where the employer was doing business nationwide"); *Gorman Publishing Co. v. Stillman*, 516 F. Supp. 98, 104 (N.D. Ill. 1980) ("the fact that the covenant applied nationwide was justified by the nationwide nature of Gorman's business"). Moreover, Defendants' reliance on *Gutreuter v. Fiber Bond Corp.* and *Buffkin v. Glacier Grp.* Is misplaced, as those cases apply Indiana law, not Illinois law. Likewise, *Callahan v. Balfour* is inapplicable because the court held that plaintiff had no legitimate interest in need of protection.

### 2. Kohan is Breaching the Non-Compete Restriction in the Agreement

Paro's evidence of Kohan's breach of the non-compete clause includes, *inter alia*, Kohan's own testimony confirming that Paro and FirmKey are competitors, the statements made by FirmKey on its website and in its marketing materials, and the undisputed fact that Kohan is a co-founder, one-third shareholder, CEO and President of FirmKey. Kohan's response to Paro's breach of contract claim rests entirely on the argument that the document – which he knowingly signed in exchange for significant consideration – is "unenforceable." Paro asks the Court to hold Kohan to his contractual obligations, including by affirming its prior ruling that Paro and FirmKey are competitors (TRO Ruling at 14), and holding that the non-compete clause in Section 4 of the Agreement satisfies the "reasonableness" standard espoused by *Reliable Fire*.

### 3. Kohan Breached the Non-Solicitation Restriction in the Agreement

Kohan's only response to Paro's argument that Kohan also is breaching the client non-solicitation restriction in Section 7(b) of the Non-Competition Agreement appears to be Kohan's self-serving Declaration that he is "not" soliciting Paro's clients, and the Court should therefore ignore all evidence to the contrary. Opposition at 13. Kohan then misleadingly argues that Paro's corporate designee, Michael Chen, "testified that there is no evidence of solicitation." *Id*. To the contrary, Chen testified that Paro was aware that Kohan was soliciting Paro's clients through Kohan's LinkedIn post:

> [One example] is the *solicitation* of Paro's customers or – and/or clients or experts. And that is in the form of – I think I recall seeing a LinkedIn post where – by which Luke Kohan announced the launch of FirmkKey. It makes mention of, you know, being open for business I think is what essentially the gist of the message was. (Chen Dep. 66:19-67:4, attached as Exhibit 1) (emphasis added).

Inexplicably, Defendants omit this testimony from their Opposition brief. *See* Opposition at 13.

Moreover, Kohan's attempt to distinguish Paro's cited case law fails to consider and address the courts' conclusions about the intent of the posts. Here, like the posts in Paro's cited cases, Kohan invited the reader to contact him to learn more about FirmKey. Kohan Dep. Ex. 6 ("Shoot me an email if you're interested in learning more, would love to hear from you."); *Allstate Insurance Co. v. Ameriprise Financial Services*, No. 17-cv-5826, 2023 U.S. Dist. LEXIS 144791, at *112 (N.D. Ill. Aug. 18, 2023) ("Under Illinois law … whether a particular client contact constitutes a solicitation depends upon the method employed and the intent of the solicitor to target a specific client in need of his services") (internal citation omitted); *Henry v. O'Keefe*, No. 01 C 8698, 2002 U.S. Dist. LEXIS 20028, at *12 (N.D. Ill. Oct. 18, 2002) ("the law does not require an express request for business in order for a solicitation to occur"). Kohan testified that he made the LinkedIn post "to let people know I've started a new company" and to inform them of what FirmKey does. Kohan Dep., 157. Accordingly, his post violates Section 7(b) of the of Non-Competition Agreement (defining "solicit" as directly or indirectly initiating, contacting or engaging in any contact or communication "that has the purpose or effect of inviting, assisting, encouraging or requesting" a client to purchase competitive goods or services or terminate or diminish its relationship with Paro).

**B. Kohan's Purported Failure to Read the Non-Competition Agreement Neither Invalidates the Contract Nor Excuses His Performance Under the Agreement**

In an act of desperation, Kohan argues that he should be excused from fulfilling his obligations under the Non-Competition Agreement because he did not read the Agreement

before signing it. Opposition at 14; Kohan Dec., ¶ 7. But Kohan's own testimony establishes that: (1) he received, read and requested changes to the offer letter he received, which contains a clear reference to the "non-compete and confidentiality agreement" (Kohan Dep., 77); (2) he was given the opportunity to engage counsel prior to signing the Agreement (*id.*, 74); (3) he was not pressured to immediately sign the Agreement (*id.*, 74); and (4) sixteen (16) days passed between the date on which Kohan executed the Agreement (October 3, 2020) and his start date with Paro (October 19) (*id.*, 14, 69, 74-75). The following testimony from Kohan's deposition exemplifies his cavalier and flippant attitude about the Non-Competition Agreement:

> Q. Did you read the title of the document before you signed it?
> A. Nope.
> Q. You didn't read anything?
> A. Nope.
> Q. You just flipped to the signature page?
> A. Yep. Kohan Dep., 75.

In his Opposition, Kohan doubles down on his argument by pointing to "Welcome to Paro" materials which apparently refer to a "Non-disclosure & innovation agreement," and not a "Non-Competition Agreement." Opposition at 4, 14. But there is no dispute that Kohan's offer letter – which he received prior to the "Welcome to Paro" materials – refers to Kohan's obligations to sign a "non-competition agreement," nor is there any dispute that Kohan had ample time to review the *entire* Agreement and to consult with counsel prior to signing it. The only "mistake" associated with Kohan's execution of the Agreement is his inexcusable lack of diligence and care in failing to read the document. Well-settled case law resoundingly defeats Kohan's "mistake" argument. *E.g.*, *Faulkenberg v. CB Tax Franchise Systems*, 637 F.3d 801, 810 (7th Cir. 2011); *Davis v. Fenton,* 26 F. Supp. 3d 727, 737 (N.D. Ill. 2014).

Instead of addressing the foregoing cases, which Paro cited in its Supplemental Memorandum, Kohan cites to century-old cases involving "unilateral mistake." Opposition at 14.

These cases prove *Paro's* point, as the cases explicitly hold that the doctrine of "unilateral mistake" does not apply to a contracting party's own negligence. *Steinmeyer v. Schoopel,* 226 Ill 9, 13 (1907). And even assuming that there was a unilateral mistake here (which there was not), unilateral mistake is *not* a defense to a breach of contract claim:

> A contract does not become voidable simply because one party drafted the document and the other party chose not to retain counsel or read the document before signing it. It is well-settled law in Illinois that a competent adult is charged with knowledge of, and assent to, a document that he willingly signs, and that ignorance of the contents of that document does not avoid its effect.

*Lyons Lumber & Building Center, Inc. v. 7722 North Ashland, LLC*, 2016 IL App (3d) 140487, ¶ 28; *McCracken Contracting Co. v. R.L. De Prizio & Associates, Inc.*, 122 Ill. App. 3d 680, 686, 462 N.E.2d 682, 687 (1st Dist. 1984) (unilateral mistake did not excuse defendant from his obligations under the contract because defendant "cannot rely on ignorance and blind trust to excuse him from acting in a reasonable and diligent manner."). Accordingly, the Court should summarily reject Kohan's "unilateral mistake" argument.

**C.     Paro Established that FirmKey Has Tortiously Interfered with Paro's Contractual Relationship with Kohan**

FirmKey's very existence establishes tortious interference, as it operates a competing business and employs Kohan. Paro has established each element of its tortious interference claim, including the basis for its irreparable injury, in its Verified Complaint (Dkt. 1, ¶ 67), its initial Memorandum (Dkt. 8 at 11-15), and its Supplemental Memorandum (Dkt. 45 at 14-15). Because Defendants offer no defense regarding Paro's ability to succeed on this claim, the Court should grant Paro's motion for preliminary injunction.

**D.     Paro Will Suffer Irreparable Harm Without Injunctive Relief**

Unable to dispute that their misconduct threatens Paro's operations, revenues and profits, client good will, and Confidential Information, Defendants again misleadingly quote two lines

from Chen's deposition regarding irreparable harm without citing the full text of his answer. For starters, immediately after Chen was asked by Defendants' counsel about "irreparable harm," one of Paro's attorneys objected on the basis that "irreparable harm" improperly asks the lay witness to opine about a legal conclusion. *See* Exhibit C-2, 67. Mr. Chen then testified that:

> A. I think in a similar vein as my previous answer, there's quite a concern about the harm or damage that FirmKey and its existence and what that might mean for Paro's business, what that could do as far as, you know, potentially hiring or poaching Paro clients or experts to come work for FirmKey and no longer work at Paro – or no longer work for Paro. *Id.*, 67-68.

Despite Chen's testimony, opposing counsel re-asked the same question and then improperly cherry-picked a portion of Chen's response in Defendants' Opposition.

Moreover, Defendants again fail to rebut, or even acknowledge, the legal standard for establishing irreparable harm. Consistent with Chen's testimony, controlling case law provides that Kohan's breach of the Non-Competition Agreement threatens Paro's competitive position. *A-Tech Computer Services v. Soo Hoo*, 627 N.E.2d 21, 27 (Ill. App. 1993) ("Once a protectable interest is established, irreparable injury is presumed if the interest remains unprotected."); *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (loss of goodwill, competitive position, and customer relationships constitute irreparable harm "oftentimes fatal to businesses, [that] cannot be readily calculated and cured by an award of monetary damages"). Defendants' failure to address these basic principles constitutes a concession and waiver. *E.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver"); *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties").

E. **Paro Pursued Its Misappropriation Claims In Good Faith**

While not aimed at any argument asserted by Paro in the Supplemental Memorandum, Defendants claim that they will seek their attorneys' fees under the DTSA and ITSA on the

purported basis that Paro has withdrawn its Motion for Preliminary Injunction as it concerns its misappropriation claims. As a threshold matter, Paro's misappropriation claims were neither baseless nor frivolous, as Paro had a good faith belief that Kohan would inevitably disclose Paro's Confidential Information and trade secrets if he was permitted to own and operate FirmKey, a direct competitor of Paro. If Defendants' seek their fees under the DTSA and ITSA, Paro will respond accordingly. But their mention of their intent in their Opposition is not only inappropriate, it is meritless.[1]

**F.     Kohan Explicitly Waived Bond Requirement**

This Court should reject Defendants' request for a bond requirement as it directly conflicts with the terms of Kohan's and Paro's agreement. Pursuant to Section 10 of the Non-Competition Agreement, Kohan and Paro agreed that the Company may seek an injunction to enforce the Non-Competition Agreement "without having to post bond…" Kohan Dep. Ex. 2. Therefore, this Court should not enforce a bond requirement.

WHEREFORE, for the foregoing reasons, and for the reasons cited in Paro's opening brief, Paro respectfully requests that this Court issue a preliminary injunction on such terms as the Court deems just and equitable.

Dated:  October 9, 2023                                        Respectfully submitted,

**ADMIIN INC. d/b/a PARO INC.**

By: */s/ Collette A. Woghiren*
         One of Its Attorneys

---

[1] Rather than continuing to pursue the DTSA and ITSA claims, Paro did the responsible thing by withdrawing those claims as a subject of its Motion for Preliminary Injunction. *E.g.*, *Cornerstone Assuranace Group v. Harrison*, No. 17-cv-04718, 2018 U.S. Dist. LEXIS 231633, at *4 (N.D. Ill. Oct. 18, 2018) (holding that voluntary dismissal of the ITSA claim alone was not sufficient to establish bad faith).

Chad W. Moeller (cmoeller@nge.com)
Sonya Rosenberg (srosenger@nge.com)
Collette A. Woghiren (cwoghiren@nge.com)
NEAL GERBER & EISENBERG LLP
2 N. LaSalle St., Suite 2200
Chicago, Illinois 60602
(312) 269-8000

## CERTIFICATE OF SERVICE

Collette A. Woghiren, an attorney, certifies that on October 9, 2023, she caused a copy of foregoing **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS RULE 65 MOTION FOR PRELIMINARY INJUNCTION** to be filed via this Court's CM/ECF System, which shall send notification to all counsel of record by operation of the Court's electronic filing system.

/s/     *Collette A. Woghiren*